## Campbell *et al. v.* Brown and Wife.

A decree of the probate court, ordering a sale of the lands of a decedent's estate, without notice to the heirs, as the statute requires, is absolutely void.

A void judgment may be objected to in a collateral proceeding.

Where it did not appear that the vendee of land had received a deed, or been let into possession, and there had been a total failure of title, on a suit for the purchase money, the vendee was permitted to set up failure of consideration in bar of the action.

IN ERROR from the circuit court of the county of Madison.

This was an action of assumpsit upon a promissory note. The defendants in the court below pleaded the general issue, and two special pleas, which alleged, in substance, that the consideration of the note was a tract of land, which had been sold by the plaintiffs, as the administrator and administratrix of one Charles McCarrol, deceased, in virtue of an order of the probate court; that the proceedings upon which said order was had were wholly irregular and void; that the law was not complied with, and that no notice whatever was given, either direct or constructive, to McCarrol's heirs—and so the probate court had no jurisdiction. To these pleas the plaintiffs filed a demurrer, which did not appear to have been disposed of by the court. The case was submitted to the jury on the general issue, and they found a verdict for the plaintiffs. The bill of exceptions which accompanied the record stated that on the trial the defendants offered to read to the jury a transcript of the proceedings and decree of the orphans' court, by virtue of which the administrator and administratrix sold the land, which was the consideration of the note sued on; and also that McCarrol had heirs at law, who were then residing, and at the time of the order resided, in this state, and in the county where the court was held, some of whom were of the age of twenty-one; and that no notice was ever given to them of the application for the order of sale. The court refused to let this proof go to the jury, and the defendants excepted.

Campbell *et al. v.* Brown and Wife.

Rucks, for plaintiff in error.

The principal question is of great importance, involving not only this sale, but perhaps many others.

Upon the death of a man, his land descends to his heirs; the title is vested in them; the administrator, as administrator, has no interest in it, nor power over it, but such as the statutes expressly give him. 1 How. 561; 2 How. 604.

The proceedings of the probate court in this case are set out in the bill of exceptions, showing that on motion of Elizabeth McCarrol, administratrix of Charles McCarroll, deceased, made on the 28th of October, 1833, it was ordered by the court that a citation issue, directed to all persons interested in the lands and tenements of Charles McCarroll, deceased, to appear at the next December term of said court, and show cause, if any they can, why the plantation on which the deceased lived next before his death should not be sold; and that the said citation be published in the Mississippian and State Rights Banner for six successive weeks.

No citation ever issued; no publication was ever made in pursuance of this order.

At the December term of said court, (23d Dec. 1833,) the record shows, that it appeared to the satisfaction of the court that the interest of all persons interested in the plantation of said McCarrol "will be promoted by a sale of the same, it is therefore ordered by the court, that the said tract of land be sold on a credit of one, two, and three years."

It is insisted that these proceedings are utterly null and void, and conferred no power upon the administratrix to sell the land ; and the question turns upon the statutes, and the construction to be given to them.

It will not be contended that this proceeding is under the act of 1823, Rev. C. 56, sec. 98, 99, which directs the probate court to order the land to be sold when it shall appear from the account, and oath of the administrator, that the personal estate is not sufficient to pay the debts. No one feature of that statute was adverted to or complied with in this case.

Nor will it be contended that this land was ordered to be sold under the act of 1829, L. M. 173, which was an amendment to the 98th section above cited, and is to be taken in connection with

it, empowering the probate court to order land to be sold in preference to the slaves, or other personal property, if, in the opinion of the judge of said court, it will best promote the interest of said estate. The court in proceeding under this statute, would be compelled to adopt the same means to ascertain the indebtedness of the estate, and that it was necessary to sell something, as prescribed in the said 98th section, and then would decide between the realty and personalty. There is no pretence that the proceeding to sell this land was under this act.

The act of 1826, L. M. 102, sec. 5, which gave to the probate court unlimited power to sell the land of any deceased person to pay debts, whenever the judge of said court might deem it advisable, was repealed by the fourth section of the act of 1829, L. Miss. 173.

The order and decree of the probate court has no foundation in the statutes, unless it may be found in the act of 1830, L. M. 319, which was passed, as expressed in the caption, to reduce into one, all the laws upon this subject. By this act, the administrator may apply to the orphan's court to order the sale of the land, suggesting that it will be for the interest of the estate. The act requires that a citation shall forthwith issue, directed to all persons in any manner interested in the lands, notifying them to appear before said court, at a day to be named in said citation, not less than sixty days from the day of issuing the same, to show cause why the land should not be sold. Provision is also made for advertising for six successive weeks in two of the most public newspapers printed in the state, particularly describing the land, requiring all persons interested therein to appear at said court at which said citation is made returnable, to show cause, &c. "and upon the return of said citation executed, if the parties to whom it is directed reside in the said state, or upon proof of such publication as aforesaid," the court is authorized to order the land to be sold, upon proof that it will promote the interest of the parties.

It will not be contended—it cannot be contended with the least plausibility, that this statute does not require notice to be served on the parties interested in the land, if they reside in the state.

The legislature intended that publication in the newspapers should operate as notice to non residents. This is in conformity

Campbell *et al. v.* Brown and Wife.

to the practice of this state in other cases, and of all other states. It is the only mode of notifying non residents. The legislature did not intend to adopt publication in the newspapers as a means of notifying their own citizens, for they direct that citation shall issue, and be returned executed, if the parties to whom it is directed reside in the state. So the order for publication in the Mississippian and State Rights Banner was a nullity, as the parties resided in the state.

Hollingsworth *v.* Barbour, 4 Pet. 466, is fully decisive of this point. The laws of Kentucky authorized such publication as was made in some instances, but did not extend to the case stated in the bill; held, that the publication was a nullity, and the decree being without notice, was utterly null and void.

This court cannot presume that publication was made as ordered by the probate court; and if it was made, it was no notice to resident citizens. For even if the statute was ambiguous upon this subject, it would be expounded according to the settled and uniform practice of the country, with an eye to justice and the constitution, which forbids the "depriving a man of his property without due *process* of law."

This court will not presume that a citation issued; but if they should, they will presume it issued according to law; that is, that it was returnable in not less than sixty days from its issuance, and contained on its face the day on which the parties should be in court. Now the administratrix, on the 28th day of October, 1833, moved the court for leave to sell the land; the citation, if issued, issued on that day, or after that day. On the 23d of December following, (1833,) being only 55 days, the court condemned the land to be sold. So if a citation was issued and served, the judgment of the court is void, upon two grounds : first, it is contrary to the positive prohibition of the statute, which provides it shall not be given in less than sixty days; and, second, the parties had no notice to appear and defend on that day, but on a subsequent day; and the same thing may be said of the advertisement, if any were made.

The proceedings to condemn this land, in the probate court, were extremely loose, irregular, and informal. Upon the mere motion of Eliz. McCarrol, citations were ordered to be issued, and

10*

Campbell *et al. v.* Brown and Wife.

advertisements to be made, for all persons interested, to show cause why the plantation on which Charles McCarrol lived next before his death should not be sold. Here is no mention of the heirs of Charles McCarrol, nor where they lived, nor any description of the land, but as the plantation on which McCarrol died. The court, in condemning the land, takes no notice whether any citation had ever issued, or publication been made, nor is there any ground stated for the sale of the land, but simply that the interest of all persons interested therein would be promoted thereby.

The administratrix should have filed a petition showing that the estate was in debt; for, if there were no debts, the administratrix could have nothing to do with the land. She should have shown who was interested in the land, and where they lived; should have given a particular description of the land, and set forth the ground upon which it ought to be sold. The court then could have ordered citation to the parties living in the state, and publication to those living out of it, if any; and upon the return of the process 'executed,' or 'publication made,' the court, after ascertaining the indebtedness of the estate, as directed by the statutes, might have ordered the land to be sold, if satisfied that the interest of the parties would be thereby promoted. But here there was no indebtedness, and the administratrix could no more apply to sell the land than a mere stranger could.

The persons owning the land were not named in the proceedings; of course they had no notice, for the clerk would not know them unless by accident. The only citation which he could issue upon this kind of proceeding would be, "To all persons interested in the plantation of Charles McCarrol, deceased," which would be void; for upon whom would the sheriff execute it? But the court did not require that even this kind of informal process should have been issued or executed upon any one, prior to the condemnation of the land. It is a principle of universal acceptation, and of undoubted law, that a judgment against a man, without notice, is void. The constitution provides that a man shall not be deprived of his property without due *process* of law. In Hollingsworth *v.* Barbour, 4 Pet. 466, the court, at page 475, say, "It is an acknowledged general principle that judgments and decrees are binding only upon parties and privies. The reason of the rule is

Campbell *et al. v.* Brown and Wife.

founded in the immutable principles of natural justice, that no man's right shall be prejudiced by the judgment or decree of a court without an opportunity of defending the right. This opportunity is afforded by citation or notice to appear, actually served, or constructively, by pursuing such means as the law regards equivalent to personal service."

Simmons *v.* Wood, 6. Yer. 522—the court say, "There is no evidence that the heirs of Whitesides had been notified to appear; and a judgment without notice to the heirs is void, the court having no jurisdiction of the persons of the defendants." Vick *v.* Vicksburg, 1 How. 444, 5; Moore *v.* Cason, 1 How. 61; Combs *v.* Young, 4 Yer. 218; 5 Wend. R. 155; 2 Yer. 283; Walk. R. 76; 2 Dev. Eq. R. 235; 3 J. J. Mar. R. 105; 1 How. 561; Denning *v.* Corwin, 11 Wend. 648; Demoss *v.* Camp, Op. Book B, page 58.

The court will see, by reference to the above cases, that the respective courts had ample jurisdiction of the subject matter involved in the cases, but had no jurisdiction of the defendants, because they were not notified to appear and defend as the law required. And the judgments were not only erroneous and liable to be reversed for error, but were absolutely null and void, and so pronounced in collateral proceedings where rights were claimed under them.

The proceedings by an administrator to sell land, must be in pursuance of the statute, or the title does not pass to the purchaser. Edmundson *v.* Robards, 2 How. 822.

There is a distinction between powers created by the statutes and those created by the parties themselves. In the former case, the law must be strictly complied with, and the courts cannot dispense with its requisitions. 1 Story's Com. on Eq. 111 to 114; 3 Johns. Cases, 107.

I take it to be clear, beyond doubt, that this order of the probate court, and sale by the administratrix, did not divest the heirs of McCarrol of their title to the land. The right which descended to them upon the death of their ancestor, remained in them as before. Campbell could maintain no action of ejectment against them, to turn them out of possession; nor could he, if in possession, (which does not appear,) resist an action brought by them, for they

were not parties to the proceedings of the probate court, nor had they any notice.

If this sale was void—if the heirs of McCarrol were not divested of title—and if no title passed to Campbell—the only remaining question is, whether the note sued on, being given for one instalment of the purchase money, can be defeated on account of the failure of the consideration.

This question was directly decided in Fowler *v.* Shearer, 7 Mass. R. 14. The note was given for land; there was a defect in the conveyance, and no title passed. The court, page 22, say, "The only consideration for the note is the deed. A consideration, to be sufficient, must be a benefit to one party or damage to the other. The defendant could derive no benefit from this deed; nothing passed to him by it—nor has the plaintiff suffered any damage; neither he or his wife have lost any thing by it. 1. N. H. R. 174; 11 Johns. R. 50; 6 Har. & John. 86; Bliss *v.* Negus, 8 Mass. R. 46; Bay. on Bills, 538; 3 Mar. 298; 4 Litt. 243; 7 Mass. R. 14.

George Yerger and William Yerger on the same side.

Oglesby for defendant in error.

It is contended, by counsel for plaintiff in error, that the court below erred in not permitting a copy of a record from the probate court in Madison county, to be read to the jury as evidence.

Counsel for defendant in error think otherwise. The purpose for which the record was intended to be used, was to impeach before them the proceedings of the probate court. This, it is submitted, cannot be done in a collateral way.

This was an attempt to annul and set at nought a decree, and the proceedings consequent thereon, in the probate court, and that, too, by a tribunal clothed with no appellate power. The proceedings of our probate courts can only be impeached by either the chancery or supreme court of the state. The probate court had rendered its judgment upon a matter which had been confided to it by the constitution, (see art. 4, sec. 18, of the revised constitution;) which judgment remained, and still remains, in force: let the

Campbell *et al. v.* Brown and Wife.

errors of the probate court have been never so apparent, they could be examined only by a court of appellate power. 10th Pet. R. 450.

The principle of law, that every act of a court of competent jurisdiction shall be presumed to have been rightly done, is doubtless sound. 10th Pet. R. 449.

Even should the probate court have erred, still the sale is valid, because her decree and orders have not been reversed. 10th Pet. R. 474.

The administrator acted under the authority of the only tribunal known either to our constitution or statute laws, which could confer upon him a power to sell the land of the deceased, and if the proceedings of the probate court were irregular, yet, when brought before any other court collaterally, they are not subject to such exceptions as might be taken on a direct appeal. The general and well settled rule of law in such cases is, that when the proceedings are collaterally drawn in question, and it appears on the face of them that the subject matter was within the jurisdiction of the court, they are *voidable* only. The errors and irregularities, if any exist, are to be corrected by some *direct* proceeding, either before the same court, to set them aside, or in an appellate court. 10th Pet. R. 477.

It is admitted that if there were a total want of jurisdiction, the proceedings are void and a mere nullity, and may be rejected when collaterally drawn in question.

When a court has jurisdiction, and has decided a question, whether the decision be correct or not, its judgment until reversed is regarded as binding in every other court. 1 Pet. 340, and 2 Pet. 169; 1 Conn. Rep. 467; 1 Day's Rep. 215.

Hughes on the same side.

Mr. Justice TROTTER delivered the opinion of the court.

The main question is, whether the decree of the probate court rendered without notice, either actual or constructive, to the heirs of McCarrol, is void and inoperative. That it is so, we have no doubt. One of the special pleas alledges, that the deceased left heirs, who were living within the county where the court sat, and

Campbell *et al. v.* Brown and Wife.

that they had no notice of the proceedings, and were not made parties thereto. That no citation ever issued to them, nor was any served on them. The demurrer confessed these facts. It surely cannot be a matter of doubt, that the decree of the court is totally void. It is not only against the express provisions of the statute, which requires notice of the proceeding to be issued to all persons interested, but stands opposed to the very first principles of justice. No man can be condemned to lose his life, liberty or property, by a judgment or decree, who has had no notice of the proceedings against him, and consequently no opportunity to contest it, 10 Pet. Rep. 161; 1 Dev. Rep. 187.

It is a principle universally recognized, that no judgment or decree is binding, unless the court which pronounces it has jurisdiction, as well of the person as the subject matter, 15 J. Rep. 141; 19 do. 33; 11 Wendell 652. The court below should therefore have overruled the demurrer to this plea, and for the same reason should have admitted the record of the proceedings of the probate court to be read to the jury. This record shows the same facts relied on in the special plea. It was rejected by the court on the ground that though the action of the court was void, it was only so in regard to the heirs, and that it could not be attacked in a collateral suit. This is undoubtedly the correct veiw of the subject, in cases where the judgment is irregular merely, and therefore only voidable. But it is equally true, that a judgment by a court which has no jurisdiction is absolutely void, and may always be assailed. Hollingsworth *vs.* Barbour *et al.;* 4 Pet. 474; 11 Wend. 652. In the last case, the defendants in an action of ejectment claimed title to the land in dispute under a deed made in pursuance of an *order* for partition. There was no showing in the record that the requirements of the statute authorising proceedings in partition had been complied with. It is then observed by the judge who delivered the opinion of the court "if a court act without jurisdiction, the proceeding is void, and if it appears upon the face of the record, the whole is a nullity. And this want of jurisdiction may *always* be set up against a judgment when sought to be enforced, or when any benefit is claimed under it."

In the case first noticed, it is said it must be shewn by the record that the court had jurisdiction of the party, either by service

Campbell *et al. v.* Brown and Wife.

of process or by publication, where that is authorized.    The case in 3 J. J. Marshall, 105, is to the same effect.    The lands which belonged to Charles McCarroll in his lifetime, descended to his *heirs* upon his death.    The title became vested in them, and can only be divested by the decree of the probate court upon proceedings instituted and conducted according to the statute of the state. The administrator as such had no interest in the lands, and can only take possession in the mode and for the purposes enumerated by the law.    One case is given by the statute in which he may sell the real estate, and that is when the personal property is insufficient to discharge the debts of the deceased.    Another is perhaps where it can be shewn that it will be for the interest of the heirs to convert it into money.    But in any proceeding in the one case or the other, the heirs must have notice.    This is required by the statute as well as by general principles of justice.

It is not shewn that the purchaser has any deed, or whether he is in possession, and hence it is unnecessary, to consider how far such facts, if proven, would bring this case within the general rule which obtains in the purchase of land, if the vendee has been let into possession, and is in possession at the time of seeking to rescind the contract, or resisting the payment of the purchase money.    In this case, the sale conveyed no title to the vendee, and the consideration of the note has therefore wholly failed.    In such circumstances, there can be no justice in subjecting him to the payment of the money, on the uncertain ground of his right of action to recover it back in a suit against the administrator.    The vendors in this case were mere trustees, and sold the land only in obedience to an order of the probate court.    They are not supposed to have any personal interest in the land, and therefore would not be liable for a defect of title. / They represent the deceased.    It is not contended that the deceased had not a good title; but it is insisted merely, that the title is by law in his heirs.    The case in 2 Stewart's Ala. Rep. 335, is directly in point, and fully sustains these views.

The judgment must be reversed, and a venire de novo awarded.